UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYCOONS WORLDWIDE GROUP
(THAILAND) PUBLIC CO., LTD.,

                Plaintiff,

      -against-

JBL SUPPLY INC. ET AL,

             Defendants.

08 Civ. 10391 (RJH)

**MEMORANDUM OPINION
AND ORDER**

Plaintiff brought this action for breach of contract and other related causes of action against JBL Supply, Inc. ("JBL") and a number of individuals and entities whom plaintiff alleges are alter egos of JBL. Plaintiff alleges that JBL failed to pay plaintiff certain sums due under contracts for the purchase of screws. Plaintiff now moves for the entry of partial summary judgment against JBL in the amount of $204,791.82. JBL and Jeffrey Matza, its president (collectively, the "JBL Defendants"), cross-move (i) for an order suppressing Matza's deposition transcript and precluding its use in connection with plaintiff's motion for partial summary judgment, and (ii) for partial summary judgment dismissing plaintiff's alter ego claims against Matza. For the reasons stated below, plaintiff's motion **[24]** for summary judgment against JBL in the amount of $204,791.82 is granted; the JBL Defendants' cross-motion **[38]** to suppress Matza's deposition transcript is denied; and the JBL Defendants' cross-motion **[38]** to dismiss plaintiff's claims against Matza is granted.

## I.      BACKGROUND

The following facts appear to be undisputed, except as noted otherwise. Plaintiff is a corporation organized under the laws of Thailand which manufactures and distributes screws and

bolts, among other things.  (Pl. 56.1 Stmt. ¶ 1.)  JBL is a New York corporation in the wholesale

industrial supplies business.  (*Id.* ¶ 4.)  Plaintiff and JBL had an ongoing business relationship,

whereby JBL purchased screws from plaintiff and, in return for payment, plaintiff shipped these

orders.  (*Id.* ¶ 8.)  At issue in this litigation are two specific sales contracts between plaintiff and

JBL dated February 13, 2007 (the "February 13 Agreement") and February 20, 2007 (the

"February 20 Agreement"), respectively (collectively, the "Agreements").  The Agreements were

executed by Matza, the President of JBL.  (*Id.* ¶ 10.)

 Pursuant to the February 13 Agreement, JBL ordered and plaintiff agreed to ship and

arrange telex release to JBL of seven containers of screws (numbered JBL-85, JBL-91, JBL-92,

JBL-95, JBL-96, JBL-97, and JBL-99).  (*See* O'Reilly Aff. Ex. D.)  In exchange, JBL agreed to

pay plaintiff a total of $182,129.33 for the seven containers.  (*See id.*)  It is undisputed that

plaintiff subsequently shipped and released five containers of screws (JBL-85, JBL-91, JBL-92,

JBL-96, and JBL-97) to JBL, which JBL accepted without objection, but that JBL failed to pay

plaintiff for two of those five containers (JBL-96 and JBL-97), which together were invoiced at

$58,201.73, because JBL lacked sufficient funds.  (*See* Pl. 56.1 Stmt. ¶¶ 12-18; Def. 56.1

Counter-Stmt. ¶¶12-18.)  The parties dispute whether the two remaining containers (JBL-95 and

JBL-99), invoiced at $42,422.78, were received by JBL.  (*See* Pl. Br. in Supp. of Mot. for Summ.

Judg. at 2.)

 Pursuant to the February 20 Agreement, JBL ordered and plaintiff agreed to ship and

arrange telex release to JBL of six more containers of screws.  (*See* O'Reilly Aff. Ex. E.)  In

exchange, JBL agreed to pay plaintiff $146,590.09.   (*See id.*)  It is undisputed that these six

containers were shipped and released by plaintiff, and accepted without objection but not paid

for by JBL.  (*See* Pl. 56.1 Stmt. ¶¶ 19-28; Def 56.1 Counter-Stmt. ¶¶19-28.)  However, JBL

claims that there were significant delays by plaintiff in releasing the containers from both

shipments, which caused JBL to incur demurrage costs that it should not otherwise have incurred.  (*See* Def. 56.1 Counter-Stmt. ¶¶ 13, 16, 18, 23, 25, 28.)

On December 1, 2008, plaintiff brought this action against JBL and a number of other defendants whom plaintiff alleges are alter egos of JBL,[1] demanding $247,218.60 for breach of contract, violations of U.C.C. § 2-101, unjust enrichment, book account, and breach of the covenant of good faith and fair dealing.[2]  Discovery in this case is ongoing.  The parties concede that there is a factual dispute as to whether containers JBL-95 and JBL-99 were actually delivered by plaintiff and accepted by defendant, which precludes summary judgment on plaintiff's claims relating to those two containers.  Plaintiff maintains, however, that there is no factual dispute that would prevent the entry of summary judgment that JBL owes plaintiff for all six containers covered by the February 20 Agreement, and for the two containers from the February 13 Agreement which were accepted but not paid for (JBL-96 and JBL-97), which together were invoiced at $204,791.8.  Consequently, plaintiff asks this Court to enter summary judgment against JBL in the amount of $204,791.82.

The JBL Defendants oppose plaintiff's motion, arguing that plaintiff did not submit sufficient evidence to be entitled to summary judgment under Rule 56, or in the alternative, that issues of fact preclude the entry of summary judgment.  The JBL Defendants cross-move (i) for an order suppressing and precluding use of the transcript from Matza's deposition in connection with the pending motions on the ground that plaintiff failed to comply with Rules 30(e)(1) and 30(f) of the Federal Rules of Civil Procedure governing deposition transcripts; and (ii) for partial

---

[1] The other defendants are: Jeffrey Matza, President and co-owner of JBL; American Eagle International, Inc. a/k/a American Eagle Int'l, a company alleged by plaintiff to be related to JBL; Coben Industries ("Coben"), another company alleged by plaintiff to be related to JBL; L & K Wholesale LLC ("L & K"), a company alleged by plaintiff to be related to Coben; and David Schlesinger, the owner of Coben and L & K.  (*See* Complaint at ¶¶ 31-37; 84-109.)  Some of these defendants have asserted counterclaims against plaintiff and crossclaims against one another. Discovery is ongoing with respect to the counter- and cross- claims, which are not at issue on the present motions.
[2] $247,218.60 is the sum of the $146,590.09 plaintiff alleges it is owed under the February 20 Agreement, the $58,201.73 plaintiff alleges it is owed for containers JBL-96 and JBL-97 under the February 13 Agreement, and the $42,444.78 plaintiff alleges it is owed for containers JBL-95 and JBL-99 under the February 13 Agreement.

summary judgment dismissing plaintiff's breach of contract claims against Matza on the ground that there is insufficient evidence in the record to hold Matza personally liable for JBL's conduct under an alter ego theory of liability.

## II.      DISCUSSION

### 1.      Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Partial summary judgment is permitted under Rule 56(d) and is governed by the same standards as a motion for summary judgment under Rule 56(c).  *See* James W. Moore et al., Moore's Federal Practice, § 56.40[2] (3d ed. 2008).   In reviewing the record on a summary judgment motion, the district court must assess the evidence in "the light most favorable to the non-moving party," resolve all ambiguities, and "draw all reasonable inferences" in its favor.  *Am. Cas. Co. v. Nordic Leasing, Inc*., 42 F.3d 725, 728 (2d Cir. 1994); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party must demonstrate that no genuine issue exists as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  As to an issue on which the non-moving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325 (rejecting a construction of Rule 56(c) that would require the party moving for summary judgment to produce evidence affirmatively establishing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof).

If the moving party satisfies its burden of proof, the "non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact

for trial." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996); *see Celotex*, 477 U.S. at 322–23.  In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 256–57; *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).  Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.  *See Celotex*, 477 U.S. at 324; *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991).

**2.      The Summary Judgment Record**

As a threshold matter, the JBL Defendants argue that plaintiff's motion for summary judgment is not properly supported and must be denied on this basis alone.  The JBL Defendants argue that plaintiff must submit an affidavit from one of its representatives with personal knowledge of the transactions between plaintiff and JBL in order to prevail on its motion.  However, Rule 56(a) clearly states that a party may move for summary judgment "with or without supporting affidavits."  Fed. R. Civ. P. 56(a).  Here, plaintiff has supported its motion through citation to the Agreements and to the transcript of the deposition of JBL's President, Jeffrey Matza.   The JBL Defendants contend, however, that plaintiff cannot support its motion through citation to Matza's deposition transcript because plaintiff allegedly did not comply with Rules 30(e) and 30(f)(1) governing deposition transcripts, such that the transcript should be suppressed.  To determine whether plaintiff's motion is properly supported, the Court must decide whether to suppress Matza's deposition transcript, since if it does so, plaintiff's motion would not be adequately supported.

The facts relevant to the JBL Defendants' motion to suppress, which appear to be undisputed, are as follows:  Matza's deposition was taken over the course of two days on June 8,

2009 and July 20, 2009.  The JBL Defendants contend that Matza and/or his counsel requested a copy of the transcript for Matza to review and execute at the end of the deposition, and renewed that request thereafter, but that plaintiff did not provide them with a copy of the transcript before filing its motion for summary judgment.  (*See* Matza Decl. ¶ 6; Kronick Decl. ¶ 3.)  On October 9, 2009, plaintiff filed its motion for summary judgment and attached excerpts from Matza's deposition thereto.  Plaintiff's filing did not include a certification from the court reporter that the transcript accurately recorded Matza's testimony.  It appears that the JBL Defendants were not provided with a full copy of Matza's deposition transcript until on or about October 27, 2009 (*see* Pl. Reply at 4), almost three months after the deposition was complete and approximately two weeks before the JBL Defendants' opposition to plaintiff's summary judgment motion was due.

On November 6, 2009, the JBL Defendants filed their opposition to plaintiff's motion for summary judgment and a cross-motion to suppress Matza's deposition transcript.  They argued that suppression was warranted because (i) Matza was not timely provided with a copy for his review, correction if needed, and signature and that the transcript was, therefore, unsigned; and (ii) a certified copy of the entire transcript was not filed with the Court.  On November 30, 2009, plaintiff filed its reply papers in support of its motion for summary judgment and its opposition to the JBL Defendants' cross-motion.  In that submission, plaintiff attached additional excerpts from Matza's deposition transcript.  Plaintiff also attached certifications from the court reporter dated June 21, 2009 and July 24, 2009, respectively, that Matza had been duly sworn for his deposition and that the transcripts of the deposition on June 8, 2009 and July 20, 2009, respectively, were a true record of his testimony.  (*See* Asfendis Decl. Ex. A.)

The JBL Defendants argue that under these circumstances, the transcript of Matza's deposition should be suppressed for failure to comply with Rules 30(e)(1) and 30(f)(1). Rule 30(e) provides:

> (1) ***Review; Statement of Changes***. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
> (A) to review the transcript or recording; and
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.
>
> (2) ***Changes Indicated in the Officer's Certificate.*** The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

Rule 30(f)(1) provides in relevant part:

> (1) **Certification and Delivery.** The officer must certify in writing that the witness was duly sworn and that the deposition accurately records the witness's testimony. The certificate must accompany the record of the deposition. . .

Despite the JBL Defendants' assertions, it is not clear that plaintiff violated Rule 30(e)(1) by failing to provide Matza a copy with the deposition transcript before submitting excerpts from that transcript to the Court with its summary judgment motion. Rule 30(e)(1) by its terms does not state that the deponent must be given an opportunity to review and correct the transcript *before* a party submits that transcript to the Court in support of a summary judgment motion; it simply states that a party must be allowed 30 days to review the transcript and sign a statement listing any changes thereto and the reasons for making them. Here, Matza was given such an opportunity—albeit somewhat belatedly. Matza was provided with the full transcript of his deposition on or about October 27, 2009 and had thirty days to review that transcript before briefing was complete on the pending motions. There is no indication in the record that Matza

identified any changes that needed to be made during this time period.[3]  Moreover, the JBL

Defendants have not argued that the transcript is inaccurate in any way.  Under these

circumstances, suppressing the transcript based solely on any delay by plaintiff in providing it to

the JBL Defendants seems unwarranted.  The JBL Defendants will suffer no prejudice if the

Court considers a transcript whose accuracy is not in dispute, and which is not controverted by

any other evidence in the record, in ruling upon the summary judgment motions.

      The JBL Defendants also complain that when plaintiff first filed excerpts from the Matza

deposition with its summary judgment motion, plaintiff did not include a certification from the

court reporter that the witness was duly sworn and that the deposition transcript accurately

recorded the witness's testimony.  Plaintiff did, however, submit such certifications with its reply

papers.  To the extent plaintiff's original submission was not in compliance with Rule 30(f)(1),

the Court finds that the subsequent submission of the certifications cures any procedural defects

in the original submission and enables the Court to consider the Matza transcript in ruling upon

the pending motions—at least on the facts presented here, where there is no allegation that the

witness was not duly sworn or that the transcript did not accurately record his testimony.[4]

      In addition, the JBL Defendants object to the fact that the entire deposition transcript was

never filed with the Court, and that plaintiff instead attached excerpts from the transcript to its

summary judgment filings.  However, there is no requirement that litigants file deposition

transcripts with the Court under the Federal Rules of Civil Procedure or under this district's local

---

[3] The Court notes, for the record, that the JBL Defendants submitted a reply to their cross-motion on December 11, 2009, approximately two weeks after the thirty day period for Mr. Matza to review his deposition transcript had expired, and did not argue at any point in that reply that the transcript contained any inaccuracies.

[4] The certification provided by the reporter and included in plaintiff's reply papers does not appear to be in compliance with Rule 30(e)(2) because it does not state whether the deponent requested a review of the transcript. *See* Fed. R. Civ. P. 30(e)(2), *supra*.  However, because the JBL Defendants did not raise any argument that the transcript violated Rule 30(e)(2), the Court will not suppress the transcript on this basis.  Moreover, this procedural deficiency would not warrant suppression on these facts.  *See* 8 Fed. Proc. Forms § 23:113 ("[T]he absence of prompt certification of a deposition under Fed.R.Civ.P. Rule 30(f) does not prevent the admission of a deposition where the adverse party has seen the deposition prior to trial, has a transcript of the deposition, and is fully aware of its contents.").  Plaintiff's non-compliance with Rule 30(e)(2) could easily be cured by a supplemental submission of a new certification from the court reporter which complies with Rule 30(e)(2).

rules.  *See* Fed. R. Civ. P. 5(d); *see generally* S.D.N.Y. Local Civ. R.  Nor is there any rule precluding parties from submitting excerpts of a deposition to support a summary judgment motion.  Indeed, the local rules contemplate that, as appropriate, parties may submit deposition excerpts rather than full transcripts in support of motions filed with the Court.  *See, e.g.*, S.D.N.Y. Local Civ. R. 5.1.

For all of these reasons, the JBL Defendants' motion to suppress the Matza deposition transcript is denied.  The Court will consider this transcript in connection with the pending motion for summary judgment.  Having declined to suppress the transcript, the Court finds that plaintiff's summary judgment motion, which cites extensively to Matza's testimony as evidence of the underlying facts, is properly supported.

**3.      Plaintiff's Entitlement to Partial Summary Judgment**

Plaintiff has moved for partial summary judgment on its breach of contract claims against JBL.[5]  Under New York law, which governs plaintiff's breach of contract claim against JBL in this diversity action, a breach of contract claim requires proof of: (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.  *See First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir. 1998).  Here, it is undisputed that JBL entered into the Agreements with plaintiff.  (*See* O'Reilly Decl. Exs. C, D.)  Moroever, the JBL Defendants have admitted that plaintiff shipped and released the screws to JBL pursuant to those Agreements, that JBL received those shipments and found them to be without defects, and that JBL failed to pay $204,773.82 that was owed for the screws under the terms of the Agreements. (*See* 56.1 Stmt. at ¶¶ 9- 28; Def. 56.1 Counter-Stmt. at ¶¶9-28.)  Thus, plaintiff has made out a

---

[5] Although plaintiff's submission is somewhat unclear, it does not appear that plaintiff is moving for summary judgment against any of the other defendants on its breach of contract claim, or against JBL on any of its other claims.  Plaintiff's motion papers only address plaintiff's breach of contract claims against JBL, and plaintiff has not submitted evidence sufficient to support the granting of summary judgment against the other defendants under an alter ego theory of liability.

*prima facie* breach of contract claim against JBL.[6]  *See Rexnord Holdings, Inc. v. Bidermann*, 21

F.3d 522, 525-26 (2d Cir. 1994) (upholding district court's grant of summary judgment on

breach of contract claim where plaintiff had shown existence of contract, performance, breach by

defendant, and damages, and defendant had not raised a genuine issue of fact to preclude

summary judgment); *Bank of America, N.A. v. Farley*, No. 01 Civ. 9346 (DC),  2002 WL 5586,

at *3-5 (S.D.N.Y. Jan. 2, 2002) (granting summary judgment on breach of contract claim).

JBL, in essence, makes two arguments why the Court should not enter summary

judgment against it in the amount of $204,773.82.  First, JBL argues that plaintiff "frustrated the

terms of [the Agreements]" by delaying the release of the screws to JBL, which required JBL to

divert the money that would have been used to pay for the screws to pay for demurrage costs.

(*See* Def. Opp. Br. at 10.)  Second, JBL argues that the motion is premature.  Neither argument is

persuasive.

JBL's contention that plaintiff's conduct frustrated the purpose of the Agreements is not

supported by citation to any evidence whatsoever.  There is no declaration from Mr. Matza

regarding plaintiff's conduct.  Nor do the JBL Defendants cite to any other evidence in the

record to support their allegation that plaintiff's actions frustrated the purpose of the contract.

Mere assertions, unsupported by any affirmative and specific evidence, are insufficient to raise a

genuine issue of material fact for trial.  Fed. R. Civ. P. 56(e)(2); S.D.N.Y. Local Civ. R. 56.1;

*Anderson*, 477 U.S. at 256–57; *Samuels*, 77 F.3d at 36 (the "non-movant may defeat summary

judgment only by producing specific facts showing that there is a genuine issue of material fact

for trial").

---

[6] The Court would reach this conclusion even if it had suppressed Matza's deposition transcript since the JBL
Defendants' own admissions in their Rule 56.1 counter-statement suffice to establish a *prima facie* case of breach of
contract by JBL.

The JBL Defendants contend that plaintiff's delay in providing them with a copy of Matza's deposition transcript somehow excuses their non-compliance with the clear dictates of Rule 56(e)(2) and Local Civil Rule 56.1, which require a party opposing summary judgment to present specific facts that raise a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); S.D.N.Y. Local Civ. R. 56.1. Specifically, the JBL Defendants contend that they could not cite to (or provide the Court with) those portions of the Matza deposition that supported their case because plaintiff did not provide them with the transcript until on or about October 27, 2009, which did not give them "enough time [to] review and use [the transcript] in conjunction with their opposition to plaintiff's motion and cross-motion." (*See* Kronick Decl. ¶ 3.). This argument is unconvincing. The JBL Defendants' counsel had a full copy of Matza's deposition transcript for almost two weeks before filing the JBL Defendants' opposition to plaintiff's motion. In fact, the JBL Defendants filed their opposition papers three days before they were due. Thus, counsel's contention that he did not have enough time to review the Matza transcript and identify those portions that might support his client's case rings hollow.[7] More importantly, Mr. Matza submitted a declaration in opposition to plaintiff's motion and did not set forth any facts therein that would support the claim that JBL now makes that plaintiff improperly delayed the release of the screws to defendant. Yet such facts, if they exist, would presumably have been within Mr. Matza's personal knowledge at the time he submitted his declaration. The fact that Mr. Matza did not have a copy of his deposition transcript when he signed his declaration should not have prevented him from including such facts in his declaration. Thus, JBL Defendants' failure to properly oppose plaintiff's motion for summary judgment has little to do with any delay by plaintiff in providing counsel with a copy of a Matza deposition.

---

[7] If counsel needed more time to review the Matza transcript in order to use it in preparing the JBL Defendants' opposition papers, he could have requested an extension of time to oppose plaintiff's motion. He failed to do so.

Even if JBL had introduced specific facts in support of its argument that plaintiff frustrated the purpose of the Agreements, JBL would not be excused from its obligation to pay plaintiff under that doctrine in any event.  The doctrine of frustration of purpose excuses a party's performance only in situations where a "virtually cataclysmic, wholly unforeseeable event renders the contract valueless to one party."  *U.S. v. General Douglas MacArthur Senior Village, Inc.,* 508 F.2d 377, 381 (2d Cir. 1974); *see Warner v. Kaplan*, 71 A.D.3d 1, 6 (1st Dep't 2009) ("the doctrine of frustration of purpose ... is not available where the event which prevented performance was foreseeable and provision could have been made for its occurrence") (citing authorities); 30 Williston on Contracts § 77:95 (4th ed.) (the defenses of impossibility of performance and frustration of purpose are not available "if the difficulties that frustrate the purpose of contract or make performance impossible reasonably could have been foreseen by the promisor when the parties entered into contract . . . if the event was reasonably foreseeable, the parties should have negotiated contract terms addressing its occurrence. . .").  Here, the possibility that there might be delays in the release of goods to JBL after their arrival in port, triggering demurrage costs, would have been foreseeable to both parties.  Consequently, any delay by plaintiff in releasing the goods to JBL would not excuse JBL from performance of its obligations under the Agreements (although it may give rise to a breach of contract claim by JBL against plaintiff and may entitle JBL to an offset of what it owes plaintiff.)

JBL also argues that summary judgment is premature because discovery in the case is not complete—specifically, it has not deposed plaintiff—such that it does not yet have further evidence which the court could consider in determining whether or not there exists a genuine issue for trial.  However, JBL has admitted that it owes plaintiff $204,773.82 for non-defective screws that it received and accepted, but never paid for.  (*See* Def. 56.1 Counter-Stmt. at ¶¶ 9-28.)  In other words, JBL has admitted that it breached the Agreements.  And JBL has not raised

12

any other defenses for which further discovery is necessary which would excuse JBL's breach or which would call into question the validity of the Agreements themselves.  (*See* Docket Entry No. 16 (JBL Defendants' Amended Answer).)  At best, JBL may have a counterclaim for breach of contract against plaintiff based on the alleged delay in releasing the screws, and may be entitled to an offset some of the $204,773.82 which it owes plaintiff.  However, the fact that JBL may have a counterclaim against plaintiff does not preclude the entry of summary judgment against JBL for the undisputed amount it owes plaintiff.  *See Gayle Martz, Inc. v. Sherpa Pet Group, LLC,* 651 F.Supp.2d 72, 83 (S.D.N.Y. 2009) ("it is well-established that the fact that Defendants may be able to recover from Plaintiff on their counterclaims, and that such recovery may ultimately be offset against damages Defendants owe under the [contract], does not preclude the court from determining on summary judgment that GMI properly terminated the [contract]"); *Waban, Inc. v. Equity Resources Servs., Inc.*, 48 F.Supp.2d 247, 249 (E.D.N.Y. 1999) (granting summary judgment on plaintiff's breach of contract claim where it was undisputed that defendant had not paid certain sums owed to plaintiff even though defendant had a breach of contract counterclaim against plaintiff because the counterclaim did not allege breaches on plaintiff's part that would excuse defendant's breach); *T.S.I. 27, Inc. v. Berman Enters., Inc.*, 115 F.R.D. 252, 255-56 (S.D.N.Y. 1987) (granting partial summary judgment on undisputed amounts owed even though dispute still existed as to other sums owed); *Electro-Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F.Supp. 1446, 1456-57 (D.N.J. 1984) (granting summary judgment on a claim for goods sold and delivered, where defendant did not dispute that goods were delivered or that invoices accurately reflected the price of the goods, notwithstanding the fact that the defendants claim for setoff remained to be adjudicated).   For these reasons, the Court grants plaintiff's motion for summary judgment against JBL in the amount of $204,773.82.

**4.      Plaintiff's Alter Ego Claims Against Matza**

Matza moves for summary judgment dismissing Count Ten of plaintiff's complaint,

which alleges alter ego liability against Matza personally, on the ground that there is insufficient

evidence in the record to hold him personally liable on JBL's contracts under an alter ego theory.

In general, a corporation exists independently of its owners, who are not personally liable for its

obligations and may incorporate for the express purpose of limiting their liability.  *See East*

*Hampton Union Free School District v. Sandbpebble Builders, Inc.*, 66 A.D.3d 122, 126 (2d

Dep't 2009); *Morris v. New York State Dep't of Taxation*, 82 N.Y. 2d 135, 140-41 (N.Y. Ct.

App. 1993); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 17 (2d Cir.

1996).[8]  "The concept of piercing the corporate veil is an exception to this general rule,

permitting, in certain circumstances, the imposition of personal liability on owners for the

obligations of their corporation."  *East Hampton*, 66 A.D.3d at 126 (citations omitted).  "A

plaintiff seeking to pierce the corporate veil must demonstrate that a court in equity should

intervene because the owners of the corporation exercised complete domination over it in the

transaction at issue and, in doing so, abused the privilege of doing business in the corporate

form, thereby perpetrating a wrong that resulted in injury to the plaintiff."  *Id.; MAG Portfolio*

*Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001) ("Under New

York law, a court may pierce the corporate veil where 1) the owner exercised complete

domination over the corporation with respect to the transaction at issue, and 2) such domination

was used to commit a fraud or wrong that injured the party seeking to pierce the veil.") (internal

quotation marks and citation omitted); *Bridgestone/Firestone*, 98 F.3d at 17-18 ("the corporate

veil will be pierced only when the corporate 'form has been used to achieve fraud, or when the

corporation has been so dominated by an individual or another corporation . . . and its separate

---

[8] In this case, the question of whether to pierce the corporate veil is governed by New York law.  However, New York law does not differ materially from the law applied in federal courts in the Second Circuit.

identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.'") (quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979)).  The burden to show that the corporate veil should be pierced lies on the party seeking to pierce the veil.  *See TNS Holdings, Inc. v. MKI Securities Corp.*, 92 N.Y.2d 335, 339 (N.Y. Ct. App. 1998).

In deciding whether to an individual so dominates a corporation that the corporate veil should be pierced, courts look to a variety of factors, including: "intermingling of corporate and personal funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors."  *Bridgestone/Firestone, Inc.*, 98 F.3d at 18 (citing *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600-01 (2d Cir. 1989)).  "However, courts recognize that with respect to small, privately-held corporations, 'the trappings of sophisticated corporate life are rarely present,' and we must avoid an over-rigid 'preoccupation with questions of structure, financial and accounting sophistication or dividend policy or history.'"  *Id.*  Thus, the guiding principle in determining whether to pierce a corporate veil is that liability should be imposed to reach an equitable result.  *See Bridgestone Firestone, Inc.*, 98 F.3d at 18; *Brunswick Corp. v. Waxman*, 599 F.3d 34, 35-36 (2d Cir. 1979).

Here, plaintiff's evidence in support of its alter ego claim against Matza is limited. Plaintiff points out that Matza is the President and majority owner of JBL, with 50% of the company's shares.  (*See* Matza Depo. at 11.)  Two other individuals each own 25% of JBL.  (*Id.* at 11-12.)  JBL has four employees other than Matza, none of whom are officers, and Matza's annual salary at JBL is $150,000.  (*See id.*)  It is not clear from the record whether Matza was

actually paid that salary after JBL found itself unable to pay its bills to plaintiff.[9]  Matza uses his personal email address for JBL business, and one of the 25% owners of JBL, who also owns part of OnTime Supply (a company that deals with JBL and shares its leased warehouse and office space), uses his OnTime Supply email address to conduct business on behalf of JBL.  (*See* Matza Depo. at 11-12, 38-40, 65-67.)  When JBL was formed, the owners did not contribute any start-up capital to the company, but instead secured a $350,000 revolving line of credit.[10]  (*See id.* at 42-43.)  Plaintiff maintains that, at the very least, these facts suffice to raise a genuine issue of fact as to whether to pierce the corporate veil and hold Matza personally liable for JBL's debts. The Court disagrees.

The fact that Matza is the majority shareholder and an officer of JBL is not, in itself, a basis for piercing the corporate veil.  *See, e.g.*, *Lowell Staats Min. Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1263 (10th Cir. 1989) ("The fact that Pioneer owns all the stock of Uravan, standing alone, is an insufficient basis to depart from the general rule that the corporation and its shareholder are to be treated as distinct legal persons"); *In re Hansen,* 341 B.R. 638, 643 (Bkrtcy N.D. Ill. 2006) (fact that individual sought to be held personally liable was president and majority shareholder of corporation is "not remotely enough" to pierce the corporate veil); *U.S. ex rel. Siewick v. Jamieson Science & Eng'g, Inc.*, 191 F.Supp.2d 17, 21 (D.D.C. 2002) ("[I]t has long been the clearly stated rule in this circuit that the existence of a sole and controlling shareholder does not alone justify invoking the alter ego doctrine.") (citation omitted); *see also Morris*, 82 N.Y. 2d at 141-42.

---

[9] While plaintiff's counsel speculates that Matza continued to receive his salary, there is no evidence to support this assertion and the Court, therefore, declines to credit it. *See Anderson,* 477 U.S. at 256–57; Fed. R. Civ. P. 56(e)(2); S.D.N.Y. Local Civ. R. 56.1.

[10] Plaintiff also contends that JBL has borrowed and owes $310,000 on this line of credit, and that this does not account for the approximately $247,000 which plaintiff contends JBL owes plaintiff.  (*See* Pl. Reply at 10.) However, plaintiff has provided no citation for this assertion, and the Court declines to credit it.

Nor does the fact that Matza and the other shareholders use non-JBL email addresses to conduct JBL business reflect the type of disregard of corporate formalities that would justify departing from the general presumption against piercing the corporate veil. *See Bridgestone/Firestone, Inc.*, 98 F.3d at 19 ("with respect to small privately held corporations, the trappings of sophisticated corporate life are rarely present"); *Zubik v. Zubik*, 384 F.2d 267, 271 n.4 (3d Cir. 1967)("lack of formalities in a closely-held or family corporation does not often have as much consequence as where other kinds of corporations are involved");. There is no evidence, for example, that Matza and JBL intermingled personal and corporate funds, or that Matza siphoned off corporate funds for his own purposes, failed to maintain adequate books and records for the corporation, or otherwise used the corporation to further personal rather than corporate ends.[11] *See Primex Plastics Corp. v. Lawrence Products, Inc.*, No. 89 Civ. 2944 (JSM), 1991 WL 183367, at *6 (S.D.N.Y. Sept. 12, 1991) (finding no grounds to pierce corporate veil and hold controlling principal liable where the individual respected the separate corporate business of the corporation and there was nothing to suggest that the corporation was just a 'dummy' for the individual). Thus, there is insufficient evidence from which a reasonable fact finder could conclude that JBL lacks a separate corporate personality or the Matza did not respect that separate personality.[12]

On the other hand, JBL is likely undercapitalized since its founders made no equity contributions and the corporation relies solely on a line of credit to fund its operations. *See, e.g.*, *Laborers' Pension Fund v. Lay-com, Inc.*, 580 F.3d 602, 612 (7th Cir. 2009) ("[s]hareholders are generally expected to invest *some* money, that is, if they want the benefit of limited liability. . . If

---

[11] Though plaintiff suggests in its brief that JBL did not maintain adequate records and commingled funds, plaintiff cites no evidence to support this assertion and thus has not raised a triable issue.

[12] Similarly lacking is any evidence that Matza's alleged domination of JBL was used to commit a fraud or other wrong against plaintiff. *See East Hampton*, 66 A.D.3d at 126; *MAG Portfolio*, 268 F.3d at 63. While plaintiff speculates that Matza caused JBL to order goods he knew JBL could not pay for, then resold those goods but still never paid plaintiff (*See* Pl. Reply at 10), no evidence is proffered to support these assertions of wrongdoing and deliberate evasion of contractual responsibilities. The Court declines to credit such unsupported assertions.

the shareholders do not invest enough equity, such that the corporation is undercapitalized, there is no basis for rewarding them by limiting their liability, and, in fact, doing so would only encourage risky behavior.  Whatever else might be said about how much equity capital is enough, here it is clear that M.A. King had *no* equity capital *at all.*  It was unquestionably undercapitalized.") (emphasis in original).  However, undercapitalization alone is generally insufficient to warrant piercing of the corporate veil.  *See id.* at 614 ("Undercapitalization is almost never the only factor in a decision to pierce the corporate veil")*; McDarren v. Marvel Entertainment Group, Inc.*, No. 94 Civ. 910 (LMM), 1995 WL 214482, at *9 (S.D.N.Y. Apr. 11, 1995) ("under New York law, undercapitalization alone is insufficient to pierce the corporate veil") (citing *Gartner*, 607 F.2d at 588); *see also Trustees of the National Elevator Industry Pension, Health Benefit and Educational Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir. 2003) ("the inquiry into corporate capitalization is most relevant for the inference it provides into whether the corporation was established to defraud its creditors or other improper purpose. . .").

Ultimately, the question whether to pierce the corporate veil in this case comes down to questions of equity.  *See Bridgestone Firestone, Inc.*, 98 F.3d at 18.  The Court finds that plaintiff has not introduced sufficient facts to enable a reasonable fact-finder to infer that equitable considerations justify departure from the usual rule that corporations are independent of their owners and that the owners have limited liability for the corporation's conduct.  *See U.S. v. Hued*, 87 Civ. 7740 (PNL), 1992 WL 346877, at *3 (S.D.N.Y. Nov. 10, 1992) (granting summary judgment dismissing alter ego claims where plaintiff alleged only that individual defendant controlled and dominated the corporation and made all the representations in an application to dismiss the bankruptcy petition, that the corporation had become undercapitalized, and that the individual defendant could not recall at his deposition whether the corporation ever issued an annual report, on the ground that "[c]onsiderably more is required before a court will

18

disregard the protection of limited liability that is guaranteed by operating through the corporate form."). Typically, of course, alter ego claims are decided on a more expansive record regarding the nature of the relationship between the corporation and the individual sought to be held liable. However, plaintiff has not argued that summary judgment dismissing the alter ego claims against Matza is premature or that any further discovery is needed into the relationship between JBL and Matza before the Court can determine whether Matza is liable for JBL's debts under an alter ego theory. (*See* Pl. Reply at 7-10.) Because plaintiff has not so argued, and because plaintiff has not met its burden of introducing facts sufficient to support alter ego liability against Matza, Matza is entitled to summary judgment dismissing plaintiff's claims against him.

## III.   CONCLUSION

For the reasons stated, plaintiff's motion **[24]** for partial summary judgment against JBL in the amount of $204,773.82 is granted. The JBL Defendants' cross-motion **[38]** to suppress Matza's deposition transcript is denied, and the JBL Defendants' cross-motion **[38]** to dismiss plaintiff's claims against Matza is granted.

SO ORDERED.

Dated: New York, New York
       June **15**, 2010

Richard J. Holwell
United States District Judge

19